IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


ALVA N. VARGAS                        )
                                      )
        v.                            )        NO.  3:07-0737
                                      )
DILLARD'S DEPARTMENT STORE            )



TO:     Honorable Aleta A. Trauger, District Judge



## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered July 12, 2007 (Docket Entry No. 4), the Court referred the above captioned

action to the Magistrate Judge for frivolity review under 28 U.S.C. § 1915(e)(2) and for case

management, decision on all pretrial, nondispositive motions and report and recommendation on all

dispositive motions under 28 U.S.C. § 636(b)(1), and to conduct any necessary proceedings under

Rule 72 of the Federal Rules of Civil Procedure.

Presently pending before the Court is the Motion for Summary Judgment (Docket Entry

No. 13) filed by Defendant Dillard Tennessee Operating Limited Partnership d/b/a Dillard's.  The

plaintiff has filed a response in opposition (Docket Entry Nos. 19-20), the defendant has filed a reply

(Docket Entry No. 21), and the plaintiff has filed a sur-reply (Docket Entry No. 22).

For the reasons set out below, the Court recommends that the motion for summary judgment

be granted and this action be dismissed.

# I. BACKGROUND

The plaintiff filed this action pro se and in forma pauperis on July 12, 2007, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 et seq. ("Title VII") against her former employer, Dillard Tennessee Operating Limited Partnership d/b/a Dillard's ("Dillard's").[1]

The plaintiff alleges that she was sexually harassed by a male co-worker for several months and that her employment was eventually terminated because she reported the sexual harassment to management at Dillard's. The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2006, and received a right-to-sue letter on June 29, 2007. See Attachments to Complaint (Docket Entry No. 1).

By Order entered July 20, 2007 (Docket Entry No. 6), process was issued to Dillard's, which filed an answer (Docket Entry No. 9) denying the allegations of unlawful conduct made by the plaintiff. On September 13, 2007, a scheduling order (Docket Entry No. 11) was entered setting out deadlines for pretrial activity in the action. There are no motions pending in the action other than the motion for summary judgment filed by the defendant. Neither party demands a trial by jury.

# II. PLAINTIFF'S ALLEGATIONS

In May 2005, the plaintiff began working as a sales associate at the Dillard's department store in Clarksville, Tennessee, and was assigned to the "denim and urban wear" section of the men's clothing department. The Store Manager was Raymond Hicks ("Mr. Hicks"), and Debbie Williams ("Ms. Williams") was her direct supervisor at the time she began working. The plaintiff was subsequently supervised by Tricia Partlow ("Ms. Partlow"). Sales associates at Dillard's received a base hourly pay plus a commission on how much product they sold.

---

[1] The plaintiff identified the defendant as "Dillard's Department Store" in her complaint. It its answer, the defendant states that it was incorrectly identified by the plaintiff and that its actual name is Dillard Tennessee Operating Limited Partnership.

2

The plaintiff alleges that, beginning in August 2005, a male sales associate named Richard Warner ("Warner"),[2] who also worked in the men's clothing department but was assigned to another section, began to harass her by coming into her section and standing "too close to her." She alleges that Warner lingered in her work area every day and repeatedly stood very close to her or leaned up against the cash register when she was using it. She also asserts that Warner would walk by her area, get her attention, and wink or smile at her and that he would bring customers into her area to ring them up on the cash register in her area. Although the plaintiff interpreted Warner's actions as a "come on" to her, she does not allege that he made any overt sexual overtures towards her or made any sexual remarks to her.

Warner allegedly acted in this manner every day, and when the plaintiff told him to leave and go back to his assigned section, he became angry and told her to "shut up." According to the plaintiff, Warner then began to act aggressively towards her by making a fist sign at her when he was in another area, moving around to different locations so that he could watch her, and consistently talking to her in a condescending, belligerent, or mean-spirited way. She also alleges that Warner told jokes about her and "bad mouthed" her to other co-workers and commented to them that she "should go back to her cave" and she was a "witch." The plaintiff concedes that Warner did not make these comments directly to her and asserts that the only comment she personally heard him make was that she was "always bitching."

The plaintiff verbally complained about Warner to her direct supervisors when they were passing by her work area but she asserts that she was not taken seriously and was essentially told to "just ignore him." She alleges that Ms. Partlow and Assistant Manager Dawn Brady both told her words to the effect that they "did not want to hear about this anymore" or "were sick of hearing about this." Although most of the plaintiff's complaints were made in passing, the plaintiff had one

---

[2] Although the plaintiff refers to this co-worker as "Richard Warren" in her complaint and in other documents, the individual's correct last name is Warner. See Defendant's Statement of Undisputed Material Facts (Docket Entry No. 15) at ¶ 6. The plaintiff agrees that his correct surname is Warner. See Docket Entry No. 24.

lengthy conversation with Ms. Partlow and alleges that she complained to Mr. Hicks twice about Warner's conduct. Plaintiff contends that nothing improved and Warner continued to act in an aggressive and derogatory manner and became more emboldened. She alleges that Warner walked toward her very quickly on one occasion gesturing with his chest as if he were going to hit her, that he would come into her area and mockingly laugh "ha, ha, ha," and that he would come into her area or follow her and just stand there and smile.

Although the plaintiff sent two letters to Mr. Hicks, dated August 14, 2005, and October 1, 2005, respectively, complaining about how the men's department was being operated and what she considered to be problems with other sales associates improperly performing their duties, in neither letter did she complain that she was being harassed by Warner. The first letter in which the plaintiff specifically alerted management at Dillard's to her belief that Warner harassing her was a letter, dated December 21, 2005, to Ms. Partlow, in which the plaintiff complained about Warner coming into her work area to use the cash register, to speak with another sales associate, and to approach customers. She also complained that, in response to her telling Warner that he needed to go to his assigned areas, Warner told her "shut up," "don't tell me what to do," and "why don't you leave, nobody wants you here." See Docket Entry No. 16, at Exhibit No. 13.

The plaintiff states that on or about January 28, 2006, she paged Ms. Partlow to complain about Warner and that Mr. Hicks later called her into his office where he yelled at her and told her that he "was tired" of her complaints about Warner. Shortly thereafter, she was called into Mr. Hicks' office on February 1, 2006, and was told that her employment was being terminated.

### III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Dillard's argues that summary judgment should be granted because the plaintiff fails to raise a genuine issue of material fact which requires that her claims be resolved by the trier of fact.

Dillard's contends that the plaintiff's claim of sexual harassment fails for three reasons: (1) there is no evidence that the alleged acts of Warner rose to the level necessary to constitute

actionable sexual harassment; (2) there is no evidence that Warner's conduct occurred because of the plaintiff's gender; and (3) the plaintiff cannot hold Dillard's liable under Title VII because she failed to reasonably apprise Dillard's that she believed she was being sexually harassed.

Dillard's argues that the plaintiff's claim that she was discharged in retaliation for protected activity fails because: (1) the plaintiff did not engage in protected activity; (2) the plaintiff cannot set forth evidence showing a causal connection between her discharge and the asserted protected activity; and (3) the plaintiff cannot show that Dillard's articulated reason for her discharge was pretext for retaliation.

In support of its motion, Dillard's relies on the transcript of the plaintiff's deposition (Docket Entry No. 21-1 and 21-2), the declaration of Raymond Hicks (Docket Entry No. 12), excerpts from the depositions of Elvin Overstreet (Docket Entry No. 16-2) and Kevin Austin (Docket Entry No. 16-3), and several other documents (Attachments to Docket Entry No. 16).

The plaintiff submitted a response (Docket Entry No. 20) to the defendant's Statement Undisputed Material Facts. She also has submitted a letter to the Court (Docket Entry No. 19). The letter does not address any of the arguments made by the defendant in the motion for summary judgment, but instead explains the plaintiff's belief that she is being followed, her telephone line is being tapped, and her actions are being monitored by persons who are unknown to her.

## IV. REPLY AND THE PLAINTIFF'S RESPONSE

The defendant replies that the plaintiff's response in opposition to summary judgment is not supported with actual evidence or argument disputing the reasons for summary judgment set out in its motion. See Docket Entry No. 21. The defendant asserts that the plaintiff's response to its Statement of Undisputed Material Facts is improper because it merely consists of arguments or unsupported factual assertions and is not supported by reference to the evidentiary record. The defendant also argues that some of the plaintiff's responses are contradictory to her sworn deposition

Case 3:07-cv-00737   Document 27   Filed 04/21/08   Page 5 of 21 PageID #: 432

testimony. Finally, the defendant categorically denies any involvement or knowledge of any attempt to monitor the plaintiff's activities and/or telephone lines as alleged by the plaintiff.

The plaintiff responds by submitting a letter (Docket Entry No. 22) in which she argues the merits of some of her responses to the defendant's Statement of Undisputed Material Facts and provides references to her deposition in support of her arguments.

## V. STANDARD OF REVIEW

Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). The Court's function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case upon which the nonmoving party bears the burden, the moving party is entitled to summary judgment as a matter of law. See Williams v. Ford Motor Co., 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come

6

forward with specific facts to demonstrate that there is a genuine issue for trial." Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmoving party]." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded [trier of fact] to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 249-52. Finally, "[a] genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

## VI. LEGAL ANALYSIS

### A. Plaintiff's Response In Opposition

The defendant correctly notes that Rule 56(e) of the Federal Rules of Civil Procedure provides:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Furthermore, the defendant is correct that Local Rule of Court 56.01(c) requires the non-moving party to provide specific citation to the record for any dispute the non-moving party has with the moving party's statement of undisputed material facts. Finally, the plaintiff was advised of these obligations by Order entered January 24, 2008 (Docket Entry No. 17), and the defendant is correct that, although proceeding pro se, the plaintiff is still required to set forth admissible evidence supporting her case and raising a genuine issue for trial.

The plaintiff's response to defendant's Statement of Undisputed Material Facts is technically deficient in that it fails to comply with Local Rule of Court 56.01 and with the basic requirement

7

of Rule 56 of the Federal Rules of Civil Procedure that the non-moving party support her opposition to summary judgment with affirmative evidence. The plaintiff has not submitted her own affidavit, the affidavit of any other person who has knowledge of the facts of this case, or any other type of documentary evidence. To the extent that the plaintiff relies on unsworn statements to rebut the motion for summary judgment, such statements do not meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure and as such are to be disregarded in ruling on a motion for summary judgment. See Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 968-969 (6th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Nonetheless, the Court's review of the plaintiff's response in opposition to summary judgment does not persuade the Court that the pro se response is so lacking or unsupported that summary judgment is warranted merely because of the technical deficiencies of the response. The plaintiff has not made a cursory or blanket opposition to summary judgment but has clearly attempted to respond to the defendant's motion in a meaningful manner. The fact that this response is in a layman's form and is lacking the technical correctness expected from an attorney is not critically significant to the Court.

First, the plaintiff's sworn deposition is before the Court and provides support for any statements made by the plaintiff which are mirrored by her deposition testimony.

Second, although the plaintiff's response to the Statement of Undisputed Material Facts contains no citation to the record, the plaintiff very rarely actually disputes a factual statement made by the defendant or offers an opposing factual statement. For the most part, the plaintiff's responses consist of arguments supporting the merit of her claims or explaining why the Court should not be persuaded by the factual assertion made by the defendant. Furthermore, the plaintiff's responses essentially track the factual testimony made in her deposition.

Finally, the bulk of the factual assertions made by the plaintiff are statements based upon her own personal knowledge and could easily be cured by permitting her to make a supplemental filing. The defendant has not pointed to any instance in which the plaintiff suggests that facts exist based

8

upon the knowledge of individuals whose affidavits are not before the Court or in which the plaintiff makes allegations of facts about which she herself does not have personal knowledge.

The Court's review of the record before it indicates that the facts in this action are, for the most part, essentially undisputed and that the plaintiff has consistently made the same allegations of wrongdoing. Indeed, the defendant does not dispute many of the factual allegations made by the plaintiff but merely argues that, even if true, these facts do not support the plaintiff's two legal claims. The Court is fully able to wade through the record before it in order to give the plaintiff a full review of the merits of her claims notwithstanding the technical deficiencies of her response in opposition to summary judgment.

**B. Sexual Harassment Claim**

The plaintiff's first claim under Title VII is that she was sexually harassed by Warner and that the defendant did nothing to stop the harassment despite her repeated complaints to management about Warner.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." See 42 U.S.C. § 2000e-2(a)(1). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

A hostile work environment for the purposes of a claim under Title VII exists if the workplace is permeated with sexually discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the plaintiff's employment, and if an objectively reasonable person would view, and the plaintiff herself did view, the environment as

9

abusive.  See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 81 (1998); Harris, 510 U.S. at 21-22.  In order to prove a Title VII claim of sexual harassment by a co-worker, the plaintiff must show: (1) the sexual harassment was unwelcome; (2) the harassment was based on sex; (3) the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action.  Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008); Knox v. Neaton Auto Prods. Mfg., 375 F.3d 451, 459 (6th Cir. 2004).

In the instant action, even when the evidence before the Court is viewed in the light most favorable to the plaintiff and when all inferences are construed in her favor, summary judgment is warranted in favor of the defendant.  Genuine issues of material fact do not exist on this claim which require resolution at trial and no reasonable trier of fact could find in favor of the plaintiff on her claim of sexual harassment.

The plaintiff fails to satisfy the first two elements of her claim because the evidence before the Court does not show that the plaintiff was sexually harassed by Warner.[3]  It is undisputed that Warner never touched the plaintiff in any manner, let alone in a manner suggesting a sexual connotation, never made any overtly sexual, lewd, graphic, vulgar, or suggestive comments to her, and never propositioned her.  The plaintiff alleges that Warner stood too close to her on repeated occasions, smiled at her, and winked at her.  However, such conduct, without other indicia of a sexual nature, simply does not amount to sexually harassing conduct.

The other conduct attributed to Warner is even less indicative of sexual harassment.  Warner is alleged to have watched the plaintiff, to have come into her work area to linger, talk to a customer or co-worker, or use a cash register, to have made petty comments about her behind her back, and to have talked to her in a condescending or mean way.  The most egregious of his alleged conduct

_____

[3] The defendant does not address the issue of whether Warner acted as alleged by the plaintiff.  Accordingly, for the purpose of the motion for summary judgment, the Court assumes as true the plaintiff's account of Warner's conduct.

10

is that he made a fist at her from another area and walked toward her while moving his shoulder as if he were going to hit her.

However, Title VII does not establish a "general civility code" and does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] ... because of ... sex.'" Oncale, 523 U.S. at 80 (emphasis in original); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000). Workplace harassment, even harassment between men and women, is not automatically viewed as discrimination because of sex. See Oncale, 523 U.S. at 80. Moreover, personal conflict "does not equate with discriminatory animus." Morris, 201 F.3d at 791; Barnett v. Department of Veterans Affairs, 153 F.3d 338-342-343 (6th Cir. 1998). While a trier of fact could find that Warner acted unprofessionally or rudely, was mean or condescending to the plaintiff, or purposefully annoyed her, no reasonable trier of fact could find that she was subjected to sexual harassment.

Furthermore, because there is no evidence in this case that Warner's conduct was of an overtly sexual nature, the plaintiff must show that the harassment was directed at her because of her gender. See Bowman v. Shawnee State Univ., 220 F.3d 456, 464 (6th Cir. 2000); Peake v. Brownlee, 339 F. Supp. 2d 1008, 1016-18 (M.D. Tenn. 2003). There is simply no evidence before the Court supporting this element of the plaintiff's case. There is no evidence that any of Warner's actions were accompanied by the type of gender-specific or anti-female statements or epithets that would suggest that his conduct was motivated by a gender discriminatory animus. See Williams v. General Motors Corp., 187 F.3d 553, 565-66 (6th Cir. 1999); Peake, 339 F. Supp. 2d at 1017.

The plaintiff's sexual harassment claim also fails because she cannot show that Warner's conduct rose to the level of pervasive harassment sufficient to alter the conditions of her employment. Under Title VII, an actionable hostile environment claim exists only if workplace sexual harassment is "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing Meritor, 477 U.S. at 67) (internal quotations

11

omitted). To determine whether the environment is sufficiently "hostile" or "abusive," the Court examines the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; Williams, 187 F.3d at 562. "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not amount to a hostile work environment. Faragher, 524 U.S. at 788 (quoting Oncale, 523 U.S. at 82).

In the instant action, there is simply no proof that Warner's conduct rose to the level of severity necessary to show that a hostile workplace existed. As explained above, Warner's conduct, while likely annoying, was not itself severe, physical, or sexually aggressive. While Warner is alleged to have made a fist sign at the plaintiff and walked toward the plaintiff on one occasion in a manner that made her feel threatened, the plaintiff fails to allege any other type of threatening behavior or that she was ever physically threatened, and the record contains no other evidence of conduct by Warner which could reasonably be construed as physically threatening. Further, while the plaintiff alleges that Warner harassed her "every day," the harassing conduct alleged to have occurred every day -- coming into her work area, standing close to her, looking at her, talking to her in a mean or condescending manner –- was not severe, and the need to attend to customers sometimes required sales associates at Dillard's to come into close proximity with each other.

Given the totality of the circumstances, no trier of fact could find that Warner's alleged conduct, even if found to constitute sexual harassment, rose to such a level of severity that it created the type of hostile and abusive work environment necessary for a Title VII claim. Compare King v. Tecumseh Pub. Schs., 229 F.3d 1152, 2000 WL 1256899, (6th Cir. July 13, 2000) (unpublished) (hostile workplace was not shown by a plaintiff's allegations that supervisor harassed her by "rubbing up behind me, cornering me by the fax machine and mail boxes, and walking me down the hall with his arm around me" and by making inappropriate comments and calling her manipulative and emotional); Bowman, 220 F.3d at 464-65 (two instances of physical battery and two instances

12

of sexual propositions not sufficient to show hostile work atmosphere); Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir. 2000) ("under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment"); Morris, 201 F.3d at 790 (simple teasing, offhand comments, and isolated incidents including a sexual advance did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1366 (10th Cir. 1997) (five incidents of allegedly sexually-oriented offensive comments during a sixteen-month period were not sufficiently frequent to create liability); Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir. 1997) (evidence of numerous personal and sexually suggestive comments did not create a hostile work environment).

Because the Court finds that the evidence before the Court does not support a claim that the plaintiff was sexually harassed by a co-worker and that she was subjected to a hostile work environment, the plaintiff's sexual harassment claim warrants dismissal. It is unnecessary to address the next step of the analysis and determine whether Dillard's would be subject to employer liability for a sexual harassment claim.


## C. Retaliation

The plaintiff's second and final claim under Title VII is that she was terminated from her employment at Dillard's in retaliation for complaining about Warner's harassment of her in the workplace. Title VII forbids an employer from "discriminat[ing] against any . . . employee[s] . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

A plaintiff may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation. DiCarlo v. Potter,

13

358 F.3d 408, 421 (6th Cir. 2004). The plaintiff in the instant action does not set forth any direct evidence of retaliation, such as an explicit statement that she was terminated due to her engaging in a protected activity. Such evidence, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the challenged action on the part of Defendant. Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003).

Accordingly, the plaintiff's claim is advanced as a circumstantial case for retaliation in which the retaliation claim is analyzed under the same McDonnell Douglas/Burdine evidentiary framework that is used to assess claims of discrimination. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987) (applying McDonnell Douglas Corp v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to a retaliation claim). In order to establish a retaliation claim, the plaintiff must prove that: (1) she engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to Dillard's; (3) Dillard's thereafter took adverse employment action against her; and (4) a causal connection existed between the protected activity and the adverse employment action. See Morris, 202 F.3d at 792-93.

If and when a plaintiff has established a prima facie case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-retaliatory reason for the challenged adverse action. Id. at 792-93. Upon the defendant's offer of a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual, masking intentional retaliation. Virts v. Consolidated Freightways Corp., 285 F.3d 508, 521 (6th Cir. 2002). The plaintiff can demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to warrant the challenged conduct. Virts, supra. The ultimate burden of persuasion always remains with the plaintiff. St. Mary's Honor Ctr., 509 U.S. 502, 511 and 517-18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

14

The defendant does not dispute that the plaintiff's termination from employment constituted an adverse action but argues that the plaintiff fails to show that she engaged in protected activity and fails to show the element of a causal connection. Further, the defendant contends that, even if the plaintiff satisfies her prima facie case requirement, it has set forth a legitimate, non-retaliatory reason justifying the decision to terminate the plaintiff's employment and the plaintiff cannot show that this reason was a pretext for retaliation against her.

The first part of the plaintiff's prima facie case requires her to show that she engaged in a protected activity. Because her claim is not based upon participation in any type of EEOC investigation, hearing, or proceeding but is instead based upon her verbal and written complaints to Dillard's management about Warner, her claim is analyzed under the opposition clause of Section 2000e-3(a). Under the opposition clause, an employee's opposition of an unlawful employment practice constitutes protected activity even if the opposition is unrelated to or precedes formal EEOC proceedings. See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989) (explaining differences in protected activity within context of suit brought under Michigan's anti-discrimination act); Holden v. Owens-Illinois, Inc., 793 F.2d 745, 748 (6th Cir. 1986).

The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings. Booker, supra. The opposition clause "does not protect all opposition activity." Holden, 793 F.2d at 751. The act of opposition must be specific and must be directed at unlawful acts. See Fox v. Eagle Distrib. Co., Inc., 510 F.3d 587, 591-92 (6th Cir. 2007).

In the instant action, it is undisputed that the plaintiff made several verbal complaints to management at Dillard's about Warner. The defendant has not submitted affidavits from any of the plaintiff's direct supervisors which rebut the plaintiff's deposition testimony that she repeatedly complained to her supervisors about Warner when they passed by her work area and that she had at least one, more lengthy conversation with Partlow about Warner. Further, in his declaration,

15

Mr. Hicks does not dispute that the plaintiff had frequent conversations with managers at Dillard's, including himself, about her coworkers. See Docket Entry No. 12 at ¶ 17. The defendant also does not dispute that the plaintiff sent a written letter to Ms. Partlow complaining about Warner's conduct.

Thus, the inquiry becomes whether these verbal and written conversations were sufficient to constitute protected opposition under Title VII. The Court finds that they were not.

In order for a plaintiff to show that she engaged in protected activity, it is not critical that the conduct at issue in her complaints is ultimately proven to be unlawful activity under Title VII. Booker, 879 F.2d at 1312-13. However, to engage in protected activity, the plaintiff must have specifically alerted Dillard's that what was at issue in her complaints was sexual harassment. Sitar v. Indiana Dept. of Transp., 344 F.3d 720, 727 (7th Cir. 2003). Although the plaintiff's subjective belief was that she was being sexually harassed, by her own account, she never complained to anyone at Dillard's that Warner was sexually harassing her or was harassing her because she was a woman. See Plaintiff's Deposition (Docket Entry No. 21-2), at 117-138. Further, even though the plaintiff made complaints about specific harassing conduct of Warner, as the Court has already determined supra, Warner's harassing conduct was not itself of a sexual nature and there was nothing about the plaintiff's complaints which should have alerted Dillard's that what the plaintiff was really complaining about was sexual harassment as opposed to just a general conflict with a co-worker.

Vague complaints of wrongful conduct or complaints which do not specifically complain about unlawful activity are simply insufficient to constitute protected activity. See Willoughby v. Allstate Ins. Co., 104 Fed. Appx. 528, 531 (6th Cir. 2004) (rejecting claim that letter by employee constituted protected activity where letter made vague references to unhappiness among Caucasian employees); Sitar, supra; Booker, 879 F.2d at 1313 ("a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice."). See also Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3rd Cir. 1995) (general complaint letter

16

of unfair treatment which did not refer to age discrimination was not sufficient to constitute protected activity for purposes of a retaliation claim under the Age Discrimination in Employment Act.

Because the Court finds that the plaintiff has not set forth evidence that she engaged in a protected activity, her retaliation claim fails and it is not necessary to determine whether she satisfies the causal connection element of her prima facie case.

However, even if the plaintiff had made out each of the elements of her prima facie case, the Court finds that summary judgment is still warranted in favor of the defendant on this claim.

The defendant asserts that, on November 25, 2005, Mr. Hicks issued to the plaintiff a written disciplinary warning after a customer complained that the plaintiff interrupted the customer and argued with another sales associate in front of the customer. See Docket Entry No. 16-9. In the warning, the plaintiff was told that she would be terminated if there were "any more instances of this type behavior." Id. Approximately two months later, on January 28, 2006, another customer filled out a written complaint card complaining that the plaintiff was "rude, not professional at all" and had "got into a tug-of-war with [another sales associate] over my jeans." See Docket Entry No. 16-11. On February 1, 2006, Mr. Hicks issued the plaintiff a written termination notice, effective immediately, based upon the customer's complaint and upon violation of Dillard's "work rule #10" that "associates must exhibit positive behavior toward co-workers. customers must always be treated courteously." See Docket Entry No. 16-12. Mr. Hicks attests that the written complaint was from a long-time customer at the store and that he made the decision to terminate the plaintiff's employment after taking into consideration that it was not the first customer complaint about the plaintiff, that she had acted rudely and unprofessionally in front of customers, and that she had been warned in the written disciplinary warning issued November 25, 2005, that future behavior of this type would result in her termination from employment. See Declaration of Hicks (Docket Entry No. 12), at ¶¶ 12-14.

Case 3:07-cv-00737   Document 27   Filed 04/21/08   Page 17 of 21 PageID #: 444

The defendant "need not persuade the court that it was actually motivated by the proffered reasons" in order to fulfill its burden of proffering a reason for the challenged action. Burdine, 450 U.S. at 254. The defendant's asserted reason is both legitimate and non-retaliatory and requires the plaintiff show that this reason was a pretext for retaliation. See Virts, 285 F.3d at 521.

The plaintiff contends that the stated reason was not the actual reason her employment was terminated. However, she has not produced any evidence to create a question for the trier of fact on whether retaliation was the real reason for her dismissal.

Although plaintiff contends that the incident which led to the written disciplinary warning was taken out of context, see Plaintiff's Response to Statement of Undisputed Material Facts (Docket Entry No. 20), at ¶¶ 19-28; Plaintiff's Deposition (Docket Entry No. 21-2), at 148-52, she does not dispute that the incident took place, that the customer complained, or that she made the comment to the customer "with all due respect, ma'am, I was talking to her [another sales associate]." See Docket Entry No. 16-9, at 2. Similarly, although the plaintiff contends that the events on January 28, 2006, which led to the written customer complaint were also taken out of context and disputes that she acted disrespectfully toward the customer, see Plaintiff's Response to Statement of Undisputed Material Facts (Docket Entry No. 20), at ¶¶ 29-35; Plaintiff's Deposition (Docket Entry No. 21-2), at 165-171, the plaintiff does not dispute that some type of interaction between her and the customer and the other sales associate helping the customer occurred and that the customer filed a written complaint. See Plaintiff's Deposition (Docket Entry No. 21-2, at 165-71.

The plaintiff also offers no evidence that the asserted reason was not a sufficient basis for her termination by showing either that the actions attributed to her by the customers were not a valid basis for disciplinary action by Dillard's or that other, similarly situated sales associates had not been terminated for engaging in the same or similar conduct.

Finally, the plaintiff has not shown that the sheer weight of the circumstantial evidence of retaliation makes it more likely than not that the defendant's explanation is a pretext or coverup.

18

Although not artfully argued, the plaintiff contends that a desire to retaliate against her can be inferred because: 1) Mr. Hicks yelled at her on January 28, 2006, after she had made a verbal complaint about Warner and told her words to the effect that he "was fed up with [her] complaining," see Plaintiff's Deposition (Docket Entry No. 21-2), at 174-75; 2) she was terminated shortly thereafter based upon the written complaint; and 3) she was not given the opportunity to explain her side of the story prior to being terminated. Id. at 175-77. She also appears to contend that Mr. Hicks had a desire to terminate her and that the written complaint was a convenient excuse to do so.

The plaintiff's evidence fails to show pretext. While the timing of the events raised by the plaintiff could reasonably be viewed as supporting the plaintiff's argument, this evidence simply fails to rise to the level necessary to support her claim in light of the undisputed evidence that the two customers had, in fact, complained to Dillard's about her behavior in front of them.

In making this determination, the Court notes that it is not within the purview of the Court to generally review the correctness of employment and management practices or decisions made by the defendant. See Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir. 2000). See also Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084-85 (6th Cir. 1994). The soundness of an employer's decision is not a matter of concern under Title VII as long as the employer has not made a decision based on grounds forbidden by federal law. See Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006).

The plaintiff's subjective belief that she was retaliated against is simply insufficient to establish a claim of retaliation. See Adair v. Charter County of Wayne, 452 F.3d 482, 491 (6th Cir. 2006) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 584-585 (6th Cir. 1992)). No reasonable trier of fact could find in her favor on this claim based upon the evidence which is before the Court.

**D. The Plaintiff's Allegations of Recent Events and the Defendant's Reply**

In her response to the defendant's motion for summary judgment, the plaintiff asserts that events have occurred since July 2007, when she filed this lawsuit, that cause her to believe that she is under surveillance and is being followed. She alleges that unknown individuals have followed or approached her at the public library, a small café, and a Goodwill store, that a grey vehicle sped off when she left the café, that her apartment is under surveillance, and that strange things are happening with her telephone line. See Docket Entry No. 19. She also explains that a question posed to her by the defendant's attorney at her deposition about whether her son resided with her "[gives her] the impression that my apartment is watched." Id. at 2.

In her sur-reply, the plaintiff alleges that similar events have occurred as recently as February 12-14, 2008, and that she has gone to the local police department to inform the police of what is occurring. See Docket Entry No. 22. Although not specifically alleged by the plaintiff, the fact that she raises these allegations within the context of the instant lawsuit implies that she believes that the defendant and/or the defendant's counsel is somehow behind these events.

Counsel for the defendant categorically denies any involvement by himself or anyone acting on behalf of his firm in any of the activities alleged by the plaintiff. Counsel further contends that the plaintiff's recitation of a "wild conspiracy theory" in response to the pending motion for summary judgment instead of making an actual response to the legal arguments made in the motion merely confirms that her claims lack merit. See Docket Entry No. 21 at 1-2.[4]

The plaintiff's allegations involve events which are unrelated to this lawsuit and the two claims raised by the plaintiff. The Court cannot verify or dispel the occurrence of the events alleged

_____

[4] In denying involvement in the events alleged by the plaintiff, counsel for the defendant made this statement, "For that matter, as long as we are dispelling wild conspiracy theories, black helicopters have not been hired to follow Plaintiff, the undersigned is not a member of the Illuminati, and the Soprano family has not been contacted to intervene in this lawsuit." See Defendant's Reply (Docket Entry No. 21) at 2.

This comment was unnecessary as it went well beyond the scope of the plaintiff's allegations. Counsel should recognize the unique situation and pressures faced by pro se litigants and should be able to respond to issues such as the one raised by the plaintiff without resort to such mocking and disparaging comments.

20

by the plaintiff but there is no evidence before the Court which in any way links the defendant or the defendant's attorney or the law firm for which he works to any of the events alleged by the plaintiff.  Further, the question posed to the plaintiff during her deposition by the defendant's attorney of whether her son resided with her, see Plaintiff's Deposition (Docket Entry No. 21-2), at 188, was a proper question and cannot reasonably be construed as an indicator of any kind of clandestine activity on the part of the attorney.

## R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS the Motion for Summary Judgment (Docket Entry No. 13) filed by Defendant Dillard Tennessee Operating Limited Partnership d/b/a Dillard's be GRANTED and this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made.  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET  GRIFFIN
United States Magistrate Judge

Case 3:07-cv-00737   Document 27   Filed 04/21/08   Page 21 of 21 PageID #: 448